Good morning, Your Honors, and may it please the Court. My name is Christina Fialo, and together with Co-Counsel Evangeline Averill and Jared Kirkwood, I represent Mr. Norberto Vega-Alvarado. I would like to reserve two minutes for rebuttal. This case is about whether Mr. Vega-Alvarado is a United States citizen by virtue of his father's physical presence in the United States, particularly his father's five years of physical presence between the years 1935 and 1959. I will demonstrate that Mr. Vega-Alvarado is a U.S. citizen and that the district court made three errors in holding otherwise. First, the district court failed to recognize that the evidence established the requisite period of physical presence in the United States. Second, the district court applied the wrong legal standard for determining the credibility of the witnesses. And third, the district court improperly excluded highly probative and reliable evidence of Mr. Vega-Alvarado's citizenship based upon an erroneous interpretation of the hearsay exceptions. Your Honors, any one of these errors could have tipped the balance in our client's favor. We ask that you find that the evidence establishes that Mr. Vega-Alvarado is a U.S. citizen. In the alternative, we ask that you remand to the district court for the taking of evidence in compliance with the correct interpretation of the hearsay exceptions. To my first point, the evidence more likely than not establishes that Mr. Vega-Alvarado is a U.S. citizen and the district court erred in finding otherwise. Your Honors, the district court chose to exclude and discount evidence presented by five witnesses. Evidence presented by just two of these witnesses, Eliseo and Mr. Carrera, alone shows that Augustin was physically present in the United States for five years. What was the second? Eliseo was the son of Augustin. That is correct. And what was the other person's name? Mr. Carrera. He's a close friend of Augustin, the father of Carrera. Carrera? Carrera. May I ask about the testimony of the son? Let's assume that he was credible. How is it that his testimony proves it is more likely than not that his father lived in the United States for more than five years after he turned 14? He testified he accompanied his father to the United States six to seven times from between two and four months at a time. This means that he accompanied his father in the United States for at least 12 months, one year in the aggregate, and at most 30 months. In addition to these trips, he testified that his father would go to the United States without him, but we don't know where his father really went. It's not a model of clarity if you look at his testimony. I kept rereading and rereading the testimony, trying to add up the months, and I couldn't get to 60 months. Can you help me on that? Yes, certainly, Your Honor. As Your Honor stated, the 12 to 28 months, that's the six to seven times accompanying Augustine to the United States for two to four months at a time, gets you 12 to 28 months. But in addition, LSAO testified that Augustine was physically present in the United States for an additional time period of 16 to 40 months. So those 16 to 40 months. So that totals 28 to 68 months. And, Your Honors, this is just between the time frame of 1946 and 1947 to 1955. And again, we're looking at the entire time period, 1935 to 1959. And give me the citation to the record for the 16 to 40 months. Your Honor, the 16 to 40 months would be around pages 88 and 89 in the Petitioner's excerpts of our record. Around? I believe yes, Your Honor. I can find the exact citation. And what does his record say that the basis of that is? Yes, Your Honor. LSAO testified that his father went to the United States by himself many more times during the 1940s and 1950s. He didn't go with him. He did not go with him. He testified that. So what does that show? It shows, at best, that his father said he was going to the United States. At worst, it means nothing. Correct, Your Honor. But as well, LSAO's testimony is corroborated and supported. Let's stick with LSAO's testimony. Does LSAO say, my father went every year for the growing season, which is from April to September? Is he saying that? No, he does not say that, Your Honor. But he does say that for at least 8 to 10 years, his father would be absent for an additional 2 to 4 months at a time. And he knew that his father was in the United States because he and his mother would go to the bank to get remittances that his father would send back to him. He also knew that when his father returned back to Mexico, his father brought American gifts like Levi jeans. So he knew, as well as the other witnesses, knew that Augustine was a Bracero. And that 2 to 4 months for 8 to 10 years, when LSAO did not go with Augustine but knew that his father was up there in Texas in the cotton fields working. Correct. That is at 88 and 89? This is around page 89, yes, Your Honor. All right. Thank you. This 28 to 68 month that LSAO testified to does not even take into consideration the time period prior to 1946 and 47, as well as after 1955. Mr. Queda, who is Augustine's close friend or was Augustine's close friend for 65 years, can place Augustine in the United States even prior to 1946. Mr. Queda declared in a sworn affidavit that Augustine was physically present in the United States for 10 to 12 months each year. Pardon me. A sworn affidavit. Was this a motion for summary judgment? This was submitted at the administrative level, Your Honor. It was also attached to Ms. Queda's deposition, which was submitted to the district court. And the It sounds like to me there's a lot of hearsay involved. What's the hearsay exception that requires the finder of fact to accept it? Yes, Your Honor. There's two or there's three hearsay exceptions, 804B4A, 80319. And if those don't prevail, then the residual exception at 807. But as far as Rule 804 You're not really arguing a residual exception. You didn't give notice. I'm sorry? You didn't give notice you were going to rely on that. A residual exception, did you? Your Honor, we did in fact give notice with regards to Esperanza. And with regards to the other witnesses, we were prevented from responding to the government's hearsay objections. At a number of points in the argument, counsel for Mr. Vega-Alvarado said, Your Honor, may I respond after an objection was sustained. The residual hearsay exception, as I understand it, means a pre-presentation of the evidence. Notice must be given to the opposing side that you're going to use the residual hearsay exception. And as I understood the record, you did not give that notice. Not you personally, but whoever was representing Mr. Alvarado. Am I wrong? No, you are not wrong. Well, then let's forget about it. Your Honor, however, if I may, the purpose of the notice requirement is to give adverse parties an opportunity to attack the trustworthiness of the evidence. And this Court has held that the failure to give pretrial notice will be excused if the adverse party had an opportunity to attack the trustworthiness. And the adverse party did have an opportunity to attack the trustworthiness during the trial. With regards to Mr. Queda's testimony, again, he could testify that Augustin was physically present in the United States for 10 to 12 months out of a 13 to 14-year period nearly consecutively. This translates, Your Honor, to 130 to 154 months. But it's a little difficult for me to follow what I'm going to count and what I'm not going to count. For example, the 804 issue, it's very difficult for me to square your argument there with his reputation as a becero could be counted. It strikes me that cases say this refers to pedigree and not on travel or work. And if that's true, that strikes out quite a few of the months because you rely pretty heavily on what he was known as, that he was known as a becero in his community in Mexico. Yes, Your Honor. How do we get around those cases? It's not pedigree for a long shot, is it? Your Honor, the 804b4a exception is a modern-day codified exception of the pedigree the common law pedigree exception. The common law pedigree exception is much narrower than the current rule, which is 804b4a. And since its creation, very few district courts or circuit courts have addressed what the meaning of 804b4a is. The rule creates a hearsay exception. Well, I thought that the statute just codified what the rule had been, which was the common law rule. Is there some case that says that the interpretation of that should be different? That is, has there been some finding that we want to expand that? I guess, Your Honor, there's two cases that I'd like to point Your Honors to. The first one is a Fourth Circuit case, United States v. Carvalho. And in that case, the rule was the Fourth Circuit admitted that the rule had its origins in the common law pedigree exception, but the Fourth Circuit explained that the modern rule codified at 804b4a is much broader as it rests on the assumption that the type of statement covered by the rule relates to a fact about a personal or family history that's so interesting to the family in common that it's likely to be based on fairly accurate knowledge. But in Carvalho, the motive to get married was kept out as not being part of personal history because it was not reliable, right? Now, what you're saying to me is that the pedigree rule has been expanded by the addition of the words personal history. Do we have any cases that tell us what personal history means? I'm keeping in mind that personal history to me sounds like a resume. And resumes, unfortunately, have become pretty unreliable these days, right? Yes. Possibly, yes. So tell me, tell me, what case does personal history, what does personal history mean besides pedigree? Yes, Your Honor. This personal history can be interpreted in light of the words surrounding it. The common law, common sense canon of interpretation advises that the meaning of a phrase such as similar fact of personal or family history should be interpreted in light of the words surrounding it. So these words are birth, adoption, marriage, divorce, legitimacy, and ancestry. And migration, Your Honors, is a fact of personal or family history that is not only similar to ancestry but often intertwined with ancestry. In fact, when individuals discuss ancestry, they not only talk about who their ancestors were but where their ancestors came from. For example, many people today talk about their ancestors coming through Ellis Island, and Mr. Vega Alvarado's ancestral story is no different except it's the modern-day Mexican-American story with a father migrating back and forth between two countries rather than coming to the United States at one point through Ellis Island. Give me a case which tells me what the content of the term personal history means in 803 and 804. One case. That would be Leal-Santos v. Gonzales. It was a Massachusetts district court case that was affirmed by the First Circuit. And in that case, the court held that, and again, this doesn't define a similar fact of personal or family history. However, it gives a sense to the court of what this term may mean, because the district court allowed a witness testimony about stories his grandmother would tell him about her trips to and from the United States, and they allowed that witness to testify to what the grandmother told him under this particular Rule 804. And we have two minutes. Thank you, Your Honor. I want to save those two minutes for the Republicans. Yes. Okay. May it please the Court. My name is Ari Nazaroff. I'm an attorney with the United States Department of Justice and represent the Attorney General this morning in this case. The only issue before this court on review is whether or not Mr. Vega Alvarado proved that between the years 1935 and 1959, his father, a United States citizen, spent at least five years in the United States. That is the issue. And he offered no evidence, no documents, and only testimony lacking in credibility of four witnesses on that point. While the standard before the district court, Judge, was by preponderance of the evidence, the standard in this Court today is whether or not the district court judge, Judge Loom, committed a clear error, clear error in concluding that Mr. Vega Alvarado failed to bear his burden of proof. Why is it a clear error? What you're saying is it's a fact. Was there something wrong with our machinery? We're close enough if you want to put that microphone. If you speak up, project, breathe in deeply. I'll project. That is much better. You need this, we record. So you need to speak into the microphone. Okay. Can you hear me now, Your Honor? Sure. Yes. I'd like to make a point. I think I was in the middle of a question when we were interrupted by the machine, so it must have been a bad question. What you're saying is that whether or not he had residency in the United States is a finding of fact, and therefore, our standard review is whether or not the district judge was clearly erroneous. That's right. Okay. And specifically, in fact, the credibility determination by district court judge Liu, an experienced district court judge, is before this Court. My colleague has to show clear error in the credibility determination, and she has not done that this morning. Eliseo, the brother, was not a credible witness. He made no mentions of his travels with his father. In a 2008 written affidavit he submitted to immigration court, he made no mention of the travels with his father when he spoke to the student council representing her brother, and she later wrote an affidavit attesting to having spoken with him. His testimony is in conflict with Ms. Carrera's testimony, who testified that the father never took any of the kids to work in the United States. And there's more. It also goes back and forth. Let me just ask you a question specifically. You rely on the case of United States v. Able for the proposition that the district court discredited the testimony of Mr. Vega Alvarado's relatives properly. But as I read that case, isn't it distinguishable the facts demonstrated in the Able case actual bias? And one of the troubling aspects of this case for me is the district court assumed that Mr. Vega Alvarado's siblings were biased based on their mere relation to him. And you cite U.S. v. Able. On U.S. v. Able, actual bias was actually shown. And this is not true in this case. Isn't that so? The honor I have for my team. Dealt with the fact that the defendant in Able and the prosecution witness were both members of the Aryan Brotherhood, a secret prison gang that required its members to commit perjury, theft, and murder on each other's, for each other's benefit. We don't have anything like that in this case. I understand that, Your Honor. I think that the district court's judge's credibility determination was he mentioned the bias as family members, but I think it's also lack of knowledge. And there's lack of knowledge in this case. The sister, Esperanza, was born in 1956. She said she had no memory of anything between 1956. Your voice is going down again. I'm sorry. The sister, Esperanza, who was born in 1956, testified she had no memory of anything between 1956 and 1959. The other witnesses also could not give any specifics. Ms. Carreras testified she had no knowledge of the locations or the years the father worked. Ms. Miendez never talked to the father. Wait a minute. Let's take a step back and invoke some reality. A Mexican who comes to the United States on the Bracero Program and tells his family, I'm going to go up and work in Texas or California. I'm going to go up al norte, to the north. Do you think he's going to have an itinerary, maybe frequent flyer miles, a bunch of receipts from the local Best Western to justify where he's been? These are people who work for minimum wages, mainly paid in cash, sometimes not even legally present. This man may have forgotten that he was born in the United States. We don't even know if he has an American passport. And you're saying there's no corroboration as to where he was. You've got to think about a town like Zapote del Sur, which has maybe 1,000, 800, 1,000 people, and he comes back in the wintertime with his money and his toys for his kids. The lack of detail. Everybody in the town knows who is working as a Bracero and who isn't. Well, there's a couple of things with your question, Your Honor. Number one, the father knew he was a United States citizen. And as a United States citizen, he could have participated in the FDR programs at the time, which was the CCC. He would have been listed for a selective service because he has a birth certificate from the United States. There's no evidence. There's no documents. There's no evidence of letters. There's no pictures. Do you know whether he could read or write? This is a man who probably harvested strawberries and chopped lettuce. Well, I understand that, Your Honor, but there's no affidavits from other Braceros  There's no evidence, documentary evidence at all. And the Congress, Congress has put the burden in district court on Petitioner. That was Congress's call, Your Honor, to say that the burden is on the Petitioner to prove it. And in this case, there's no documentary evidence and testimony that the district court, sitting four feet from the witnesses, had trouble with from a credibility point. What about his testimony? What about the testimony of Elisera was not credible? Well, I don't know which of his testimony, Your Honor, was credible and which were not. As we've mentioned before, he first he said he was 6 and 7 when he went. Then he changed it to 4 or 5. Then he said he traveled for three to four years. Then he said he only went for one year. When he submitted his affidavits to the immigration court, and he knew this was going to be in his brother's removal proceedings, he didn't mention at all traveling with his father. How do you leave something like that out when your brother's status is at stake? He made no mention of it when he was talking to the student council, who spoke with him and wrote up an affidavit memorizing their conversation. And his testimony contradicts other testimony in the evidence. And that casts it into doubt. And there's been – and so this district court, Judge Lew, made the right decision, Your Honor. He made the right decision in this case. And my colleague has not shown how there is clear error in that credibility decision. I would – Who was the person – who was the person who said that the father never took any of the children across the United States? This is Ms. Carrera. She is the spouse of a very close friend of Mr. Vega Alvarado's father, and she's also a distant relative. So she was a distant relative and the wife of his friend. Of his very close friend. And were they – does the evidence show they were in the same community or same town? That's right. They're from the same village of El Zapoto. Not New York City. No, Your Honor. It's very small. No, that's right. It's very small. She testified that the kids never went. She testified the kids never went. She also testified it's a relatively small community. So – There was a direct conflict in the evidence. There was a direct conflict, Your Honor, because she – and Judge Liu pointed that out in his decision, in his written decision. And the clear error has not been shown that that is wrong. I would just like to finally conclude, Your Honor, by saying that independent of even the credibility finding, Petitioner still could not meet his burden. There's, as I mentioned, no documentary evidence, no pictures, letters, affidavits. Well, let me just ask. Didn't he submit two sworn affidavits from friends of his father, attesting to his father's presence in the United States? He – one of the affidavits that Mr. Vega-Alvarado submitted, I think you're referring to, is Ms. Banda, who her deposition testimony also came in. And she testified that Shinyawa spoke to the father about the years he had spent in the United – the work or his travels, or any work or travel. There was a statement from Mr. Carrera. He had passed away, and therefore his wife's deposition testimony came in. It came in, but that was rejected by the board, and it didn't have any kind of clear dates or specific times. But Rego Carrera had died? Was that it? Is that what you're saying? I can't say. I thought that, as he submitted an affidavit stating that the father worked in the United States 10 months out of the year for at least 13 or 14 years. Right. That's an affidavit on page 236 of the record. Yes. He has passed away. We tried to get that position. All right. Do you want to address the issue about whether the court was wrong in excluding, as admissible here, say, under 804 and 803, the reputation of Agostin's personal history and the statements that Agostin made to blood relatives about his personal history with respect of what the term personal history means? And if you have a different view than counsel for Berra, please tell us upon what it is based. Of course, Your Honor. Neither of those rules, 804, 803, 19, encapsulate an individual's type or duration of employment or travel in another country. And even more critically, courts have held, and this Court in Medina, Casca, that this exception does not apply when such information involves the highly debatable or controversial matters at the heart of the dispute. In that view you can't have admissible evidence that it's relevant? Well, if it's relevant to what is pedigree, absolutely. If somebody is trying to figure out who is. Counsel, listen to my question. Absolutely. Personal history. What is the content of that phrase in 803 and 804, and what is the basis of your giving us that content? I would say that the contents of that is pedigree. Pedigree and law. But it's already in there. I mean, we understand it's based on the pedigree exception of common law. But all the items of pedigree are listed seriatim in both of those statutes. And then the phrase also is added, or personal history. Now, if you're going to give meaning to every portion of a statute, let's give meaning to personal history which is not simply cumulative of other instances of pedigree. Or is it your position that personal history only means instances of pedigree which are not specifically stated in the statute? Well, Your Honor, there's really no definition. I haven't found a definition of personal history. That's outside of that. Outside of that very limited. Have you found any definition of personal history in the statutes which says this is, under the Latin phrase, they used them fighting a bird of a feather flock together, the idea that the personal history means nothing more than pedigree? Or a family. Yes. Well, you know, courts have held that it could mean citizenship. It could mean some of those. But there's been nothing. Citizenship doesn't sound much like pedigree to me. That's true, Your Honor. But there's been nothing. And opposing counsel has not shown how. So the bottom line is that you have no case which tells me what is included or excluded under the term personal history in either 803 or 804. True. I will say this. I do have a case that says that this limited exception, 803b-4, and I don't know if you've seen it, but 803b-4 does not apply to when the information that it would provide would be at the manners of the heart of the dispute. And that's what this is. That's got value. I understand that. But what about this case that was cited by, I think it was the Leo, I can't remember the last name, v. Gonzalez, a Massachusetts district court case where the ladies traveled to Portugal and back came in under the hearsay exception? Your Honor, we talked about that case on page 33 of our brief on footnote 14. First of all, the Second Circuit case never addressed these exceptions. The district court did let some evidence in along those lines, but that was not the case that was cited.  It was the case that was cited. And this case turns on something like this coming in. And this Court, Your Honor, and Maseka has already said. So is it your view that personal history means we allow the evidence in if it's not important, but we don't allow the evidence in if it's relevant and therefore important? That's a strange rule. Well, I think that what the Ninth Circuit said is this is such a limited exception that when it comes in, that it should be only limited to providing the family tree, the pedigree, someone's citizenship, but should not be. But citizenship is granted by a bureaucrat on Sansom Street and then by a Federal judge swearing you in. Those aren't members of the family. That's right. But I think somebody could testify as to somebody else's citizenship. My father was a U.S. citizen. Well, if you can testify my father was a U.S. citizen, why can't he say my father was a Bracero and went to Texas? Well, here's where it comes in. When it comes in to describe duration of employment, travel in another country, type of employment, there have been no cases that have allowed that in, Your Honor. No precedent decisions that have allowed that in. It seems to me that the citizenship of a person may be much more important than where he worked. Well, in this case, in this case, Your Honor, we're dealing with where he traveled and where he worked. All right. So last time, any case telling me what personal history means? I could not find one, Your Honor. Well, let me ask you a question. You cited the case of U.S. versus Medina Gasca, but that arose in a criminal illegal entry context. And to me, it's not clear whether the same rule applies in the context of seeking citizenship. Well, I think in that case, it was an alien smuggling case, and the government, I believe, introduced an affidavit from one of the people who were collected at the site who was an alien. And in that affidavit, he indicated that he was a citizen, I believe, of Mexico. So that came in, and the Ninth Circuit said that although this exception does allow someone citizenship evidence to come in, because in that case, because it would involve the controversial matters where someone was convicted of transporting illegal aliens, because it would go to the heart of the dispute, it was such a limited exception that the district court should have not let that in. Why should that rule apply here? Well, because, first of all, Your Honor, our big argument is these are not credible  We are not talking about pedigree or who's related to who on the family tree or citizenship. What we are talking about, they are trying to get in information where someone traveled, what type of work they did in another country, type of employment they did. The rule does not allow for that. And the courts have construed it narrowly. I see my time is up, Your Honor. Thank you very much. I just conclude that Judge Liu made the right call, and this Court should deny the petition for review. Thank you. Mr. Ayo? Your Honor, I have two points. First, I'd like to make a correction to a statement I made previously. Pull the microphone down a little bit. All right. Thank you. Your Honor, I have two points. I'd first like to make a correction to a statement I made previously. LSAO's personal knowledge about his father's physical presence is on page 89 of the Petitioner's Excerpt of Record, and his testimony about his father's absence is on page 94, Your Honor. To my first point, the standard of review is not clear error. It's de novo because the district court applied the wrong legal standard for determining credibility, the wrong legal standard for determining what the hearsay exceptions mean, as well as when, in terms of the facts themselves, the court ---- How did the district court ---- Judge Liu is a very capable judge. He's been here for a long time. You say that he didn't know what he was doing. He was applying a de novo review. I don't quite understand why you say it's a de novo rule for credibility finding. I've never heard that. Your Honor, this Court explained in Smolin v. Chatter that a judge must give germane reasons for rejecting the testimony of a witness as noncredible, but in this court case, in the district court case, the district judge did not give germane reasons for rejecting the testimony of the witnesses. He only specifically said that they were biased because of their relationship to Mr. Vega Alvarado. The second error the district court made that was legal in error is the district court failed to consider the totality of the circumstances when determining whether inconsistencies in the witnesses' testimony existed. So for ---- But Smolin's is a Social Security case, right? Yes, Your Honor. So that's a different standard we use. Judge Liu saw these witnesses. Does he have to give a specific reason as to why he considers them not credible when he saw their demeanor? Does he have to say, I find the demeanor of witness A to be lacking because he rubs his hands together all the time? Does he have to say that? No, Your Honor. But the district court did not look at demeanor. They looked at inconsistencies in what the record said. So, for example, Ms. Cadeda was never before the district court judge. He was only reviewing her deposition. And the district court failed to consider the totality of the circumstances with her deposition. At one point, Your Honor, in Ms. Cadeda's deposition, she said that Augustin did not take any of his children back with him to the United States to work as a bracero. And the district court admitted this into evidence. However, the district court excluded the immediately following passage in which Ms. Cadeda clarified this previous comment. She explained that Augustin did take his children to the United States. This excluded passage shows that Ms. Cadeda was just confused about whether Augustin had taken his children to the United States to work with him or whether to simply to as a companion. Therefore, this passage does not contradict anything LSAO said, and the district court improperly found that there was inconsistencies between the two testimonies. Thank you very much. Your Honor. The case of Vega-Alvarado v. Holder will be submitted. And we thank you for your fine presentation. Thank you very much. I'd like to thank pro bono counsel as well. The test cases were both very good. And court will be adjourned until 9 o'clock tomorrow morning. All rise.
judges: Wallace, Nelson, Bea